Good morning and welcome to everyone today Tuesday March 19th 2013 the call of the doctor for today our first case is agenda number ten case number one one four three one zero Karen Wilkins versus Rhonda Williams counsel for the May it please the court. My name is Karen DeGrande and I'm here today on behalf of the defendant appellants Rhonda Williams and Superior Air Ground Ambulance Service, Inc. With me today is Kimberly Godden of Superior Ambulance and also a representative of the Illinois State Ambulance Association. The case comes before the court on the appellate court's reversal of an order entering summary judgment for the defendant. For the defendants on a fully developed record the central issue concerns the immunity provision of the Emergency Medical Services Systems Act. That provision provides immunity when it applies for against actions that fall short of willful and wanton misconduct. That is what has to be proved to prevail in a civil action. The appellate court ruled that the broad immunity provision at issue here encompassed the non-emergency transport during which this accident occurred, but the court carved out an exception for third party motorists to proceed on a negligence theory. According to the appellate court, the plaintiff, the driver of another vehicle and not the patient can proceed on a negligence theory, while the patient in a situation covered under the immunity provision would be limited to willful and wanton misconduct action. And the plaintiff adds a further limitation on the immunity provision and contends that it only applies to medical malpractice claims. The appellate court reached this conclusion based on an ambiguity that it perceived in the immunity provision and a conflict that it perceived with the vehicle code. We disagree. Our position is that when EMS immunity applies, it applies to all civil actions brought by any claimants. The statute has no such restriction. The first question, of course, is whether the EMS immunity provision applies. And our position is that under the plain language of the act as applied to the unrebutted facts of this case, it does. The plaintiff brought a one-count complaint for negligence. She describes in her complaint an accident that occurred when she attempted to make a left-hand turn on 95th Street in Chicago across several lanes of traffic so that she could enter a parking lot. At that time, Rhonda Williams, the ambulance driver, according to the plaintiff, didn't keep a proper lookout and didn't allow the plaintiff to complete her left-hand turn. The plaintiff's theory is that the ambulance driver was proceeding too fast and failed to yield, essentially. Now, the immunity provision is silent in failing to distinguish between the types of potential injuries. Is that correct? Potential injuries? Yes, it's silent in failing to distinguish the types of potential injuries to the parties or the nature of their claims. If I understand your question correctly, yes, Your Honor. It doesn't specifically say, we're talking about civil actions for damages, and it doesn't make any Would that in itself create an ambiguity in the plain language? I don't believe there is any ambiguity in the plain language, no, Your Honor. And it applies to civil actions for damages, and it pertains to willful and wanton misconduct as the standard of proof for actions that are not subject to the broad reach of the immunity provision. Mr. Grand, what are we to do with the willful and wanton aspect of this case? I mean, is it your position that they should or shouldn't be allowed, if we agree with you with respect to immunity, should they be allowed to re-plead and plead willful and wanton? I don't believe so, Your Honor. And the plaintiff, of course, didn't plead willful and wanton as the plaintiff conceded in the trial court. And I think the facts of this case, even if the plaintiff were to include the type of conclusory language that you would expect to see, if there were a willful and wanton count, the facts wouldn't support that conclusion. And I think the unrebutted facts are quite clear on that point. We have two eyewitnesses, along with the ambulance driver herself, who testified to the fact that the ambulance driver was not speeding. We have the conclusion of the investigating police officer that the cause of the accident was the plaintiff's failure to yield during this left-hand turn on this busy street, and not the speed of the vehicle of the ambulance driver. And I believe that the points that the plaintiff attempts to raise to support a contention that there could be a fact issue for the jury are not well-founded. And that might be the case, but summary was, at the trial court level, summary judgment was granted to your client? That's correct. Based on the immunity provisions, right? So there was never even a discussion, was there, about whether or not, I mean, they would have no reason to request to replete at that point, right? Well, what happened, Your Honor, was our motion for summary judgment did address the nature of the allegations, and did ask the court to conclude as well as the plaintiff did, that there, that summary judgment should be entered on the complaint in its entirety. But he granted it with respect to immunity? Granted it with the... And I stand corrected. I suppose at that point, plaintiff's counsel could have requested to replete under willful and wanton. Could have requested, but... Did not? Did not make that request at that time. According to the deposition testimony of the two EMTs involved, Rhonda Williams, the driver, and her partner, Vernette Henderson, were working as a team, doing their job of transporting a patient from Lincoln Park Hospital to a nursing home on the south side of the city of Chicago. Williams drove the ambulance, and Henderson sat in the back to monitor the patient. It's unrefuted that at the outset of the transport, Henderson took the vital signs of the patient, that at all times she sat directly behind the patient during the transport to monitor the patient and make sure that there was no change in his condition, and that certainly was fully in keeping with her normal duties and her job on this ambulance run. It clearly falls within the purview of 3.150A. Any person, not limited to public employees, certified pursuant to this act, the EMTs both testified to their certification, there's no question on that issue, who in good faith provide emergency or non-emergency medical services in the normal course of conducting their duties. And the testimony shows, as I just outlined, that that was the situation in this case. It was a typical non-emergency medical transport. There was no deviation from any rule or procedure. Shall not be civilly liable as a result of acts or omissions, including the bypass of medical procedures. There are no nearby hospitals or medical facilities providing such services. And Section B of the immunity provision expressly encompasses both private and governmental organizations who employ EMTs, such as Ms. Williams and Ms. Henderson. Ms. Grant? Yes. Do we have to read a limitation into the immunity statute to find that it doesn't apply? I believe that the court would have to rewrite the statute, yes, Your Honor, and I don't think that it would be a reasonable interpretation of the statute. And clearly the non-emergency medical care under 3.10G was involved in this situation. And the statute doesn't reasonably allow for the court, and I believe that the appellate court was wrong, when it sliced off the driver, sliced off the driving conduct. If that were the case, if the appellate court were correct, then that certainly would fly in the face of this court's interpretation of the immunity provision to encompass transport. What is transport besides driving? So you have to have both. You have the non-emergency medical services being provided in the course of this transport. Obviously, if they're not driving, they're not going to get from one point to another. This interpretation, I'll submit, is entirely faithful to this court's decision. And it's the same provisions in the American National Bank case and in Abruzzo. In the American National Bank case, the court applied the immunity provision under circumstances where the responders' activities were yet another step removed from precisely providing medical care. They weren't providing medical care. They weren't even in transport. The paramedics in that case, tragically, could not find the patient in the apartment building. And the court found in applying the EMS immunity provision that the conduct was preparatory to rendering medical care. And that that is what the General Assembly meant, this court determined, by including such a wide range of matters within the EMS Act. The court specifically held that the broad language of the EMS Act called for broad construction of the immunity provision. So the court, in that instance, read the application of the provision to go beyond medical care, beyond transport, and into the situation of locating the patient in the building. Fast forward eight years to Abruzzo when this court took another look at the immunity provision. At this point, the statute had been amended since the decision in the American National Bank case, and instead of referring to life support services, the statute referred to, it was expanded actually to include emergency or non-emergency provision of medical services, the EMS Act, or rather the Immunity Act. And by this time, the General Assembly deleted the phrase for purposes of transporting a trauma patient. According to this court, those revisions only broadened the scope of the immunity provision. This court rejected the very argument that's being advanced by the plaintiff and her amicus that emergency or non-emergency services somehow shrank or is narrower than the concept of life support services. And I think under the circumstances of this case, it's very significant that in Abruzzo, this court observed that the EMS Act, or rather the Immunity Act, observed that transportation of patients is implied by the reference to bypassing of nearby hospitals or medical facilities. The court also observed that transportation reference is not limited to emergency situations. So the conclusion is repeated in Abruzzo, even broader reach of the immunity provision after the amendment supported the interpretation that the phrase emergency or non-emergency medical care encompassed life support services, broadened it. And I would submit that the plain language of those phrases also supports that reading. The legislature has not responded to Abruzzo or American National Bank with any amendment that signals a different interpretation. So the court's statements in Abruzzo should be considered as part of the statute. Therefore, what we have, emergency or non-emergency encompassed within the statute, patient versus non-patient encompassed within the statute, medical services, transport, preparatory conduct, all within EMS immunity. To the extent that the appellate court contended that the statute was silent as to third party claims, the court's statement in Abruzzo I don't believe calls for this court or called for that court to read that limitation into the act. The language and the clear intent of the act doesn't support that as a reasonable reading. Because I think if you change the hypothetical a little bit, you can see how that simply doesn't work under this statutory scheme. Let's say that the ambulance driver, now we know it encompasses both emergency and non-emergency. Let's say the ambulance driver was responding to an emergency call, as in the Harris case, for example. So going faster than the vehicle code would normally permit, using emergency lights and so forth and so on. In that situation, under the appellate court's analysis, that still would be a non-emergency call. That would be a situation where the third party motorist would not come within the immunity provision, but the patient would come within the immunity provision. So we have a situation where the patient has this willful and wanton burden and the third party motorist doesn't. I don't think that makes any sense. And the first district, when it decided the Brock case, didn't think that it made any sense to make a distinction between a contribution claim brought by another entity versus the patient. The legislative intent of protecting the parties that come within the immunity provision from tort liability is going to be the same, whether it's brought by somebody for contribution or a third party motorist or a patient. Also problematic with the appellate court's analysis is what about the situation of family members or healthcare providers who are riding in the back of the ambulance? Those individuals, let's say if there was an automobile accident, would have the option to sue and proceed on a negligence theory. The patient wouldn't. That doesn't seem to make sense under this statute. What about the patient himself? Does the patient himself carve up the duties and say, well, if the somehow if I can construe this as my injury results from the driving conduct versus the medical services conduct, then I can proceed on a negligence theory versus a willful and wanton level of proof. And I don't believe that the statute suggests that type of interpretation is reasonable, but that would follow under the appellate court's analysis. And as I said, that also applies to the medical malpractice versus other types of claims. There's no restriction in the statute, and I don't believe that whether a theory is medical malpractice versus another theory that there's any difference in the impact that it potentially has on the legislative goal of giving the EMS worker a safe place to live, a safe place to work, a safe place to work, a safe haven to some extent, so that the EMS worker can do its job and not have a concern of civil liability for every potentially negative situation that arises in this, in the course of these difficult duties. The immunity provision, and it's not limited to the notion of making sure that EMS providers can do their job in the situation, in the high pressure situation, because as we know, the court or rather the legislature has included non-emergency as well as emergency situations, but it doesn't take much imagination to envision that where medical transport is necessary, the situation can change dramatically in a short period of time, and that's why that person is in the non-emergency medical transport situation versus a taxi cab or some other method of conveyance. And I also would draw the court's attention to the concerns that were raised in the task force report that the amicus included in its appendix, because I think it raises and illustrates some very, very important policy concerns of the court in providing EMS throughout the state of Illinois about the problems that face not just governmental, but also private EMS providers in an atmosphere where it's more and more difficult to obtain Medicare reimbursement, where the EMTs are not coming into the profession, they're going into higher levels, and if the court looks at page 5 of that task force report, it specifically outlines the financial challenges for private EMS providers. So I think that's an important part of the legislative goal. As far as the vehicle code, the defendants respectfully disagree with the appellate court that it conflicts with and supersedes the EMS immunity provision, and the plaintiff has put three sections of the vehicle code in play. The section 205, which talks about public employees and their conduct in an emergency driving situation. 907, which involves the way that everyone else has to drive in that situation when they see the vehicle coming along with, the emergency vehicle coming on with lights and sirens. And section 1421, which also allows rescue vehicles to use those, that equipment under emergency situations. Not the situation here, but I see that my time has come to an end, but I'll just close with a comment that the restricting civil liability in this situation to Willful and Wanton does not abrogate the motor vehicle code. It has full application. In the situation of civil liability, there still can be liability for Willful and Wanton. There's no violation of the law. There's no violation of the law for Willful and Wanton and there's no violation of the law for Willful and Wanton. And of course all of these individuals are subject to any of the penal results that can occur, or liabilities that can occur as a result of violations of those statutes. Thank you, Your Honors. Thank you. Mr. Chief Justice, members of the Court, for the record, my name is Lynn Dowd and I'm here today along with my trial counsel, Christopher Lawler, on behalf of the plaintiff, Appa Lee, Karen Wilkins. May it please the Court. Your Honors, I hope today to crystallize our conversation and make it easily understood as to how the legislature has spoken to all of us through its legislation, through its express words, and how the reviewing courts have consistently interpreted really the three statutes at issue. First, the Motor Vehicle Code, the Tort Immunity Act is relevant, and then of course the Emergency Medical Services Systems Act. And if I could just put this into a little bit of a historical context, as I was preparing today, it helped clarify my thoughts. Going back as early as 1923, our legislature has regulated vehicular traffic. Back then, through the Court's decisions, we see that it had an anti-hit and run statute, and then as early as 1935 is where we have our Vehicle Code. And this is just looking back through the Code to find those data points. In 1965, the legislature promulgated the Tort Immunity Act based on the specific concerns and public policies dealing with the financial stability concerning municipalities and their tort immunity, but also in response to this Court's Molitor and Harris rulings, which abolished common law municipal immunity. And this is reflected in the Court's Abruzzo decision. And then not until 1980 did we have the Emergency Medical Systems Act promulgated. However, in all of these statutes, with one exception, in the Tort Immunity Act, there has never been an exemption, a limitation, a privilege for the duty every vehicle operating on the roads of this state owes to other vehicles and pedestrians to operate with due care. This is a matter of essential public safety. And this Court's analysis of the Tort Immunity Act and the analysis in all of the immunity decisions that I've read and preparing for today, we look at what the duty is and then we look to see if the immunity statute lifts that actor outside of that duty. So what are the two competing duties here? With the Motor Vehicle Code, it's the duty to drive with ordinary care. That's been our baseline since 1923. That hasn't changed. As society evolved, vehicles evolved, pedestrian traffic evolved, cities evolved, our legislature has certainly stepped in and addressed issues. It knows how to amend a statute. So with respect to yes, sir? Where do we find in 3.150 a distinction between ambulances with their lights and sirens blazing and those without? In the Emergency Medical Systems Act? Right. We find that in the case law. The Court's interpretation of that statute. So the statute, as far as the statute is concerned, it's somewhat of an artificial distinction, isn't it? Just based on the statute? It is not an artificial distinction with respect to who the claimant is. If you're talking about the patient in the cabin, perhaps, because that is, as at least five reviewing court decisions from the State of Illinois Reviewing Courts and the Seventh Circuit have determined, that statute only applies to professional liability claims vis-a-vis the patient in the cabin. With respect to the public, the EMS Act has never been interpreted to give immunity vis-a-vis for ordinary collisions. This was a vehicular collision. This ambulance by the defendant's own testimony was operating as an ordinary vehicle at the time of the collision. Ms. Henderson testified to that. That was her training. Her employer told them that unless they're under lights and siren, they are to operate pursuant to the rules of the road. These are the professionals. This is their testimony. It wouldn't be actually on the road without a patient in it, would it? Actually, they could be driving to and from work. They could be transporting an organ. There are other uses. Or on the way to a patient. They wouldn't be driving without a purpose. It would be on the road without an EMS reason. Isn't that right? Well, they could be driving to and from work. They could be driving an ambulance. They could be on the road. I mean, I can think of a lot of cases where there's not an EMS purpose. But I think the purpose is not dispositive. Again, it's the duty. What's the duty that the reviewing courts have interpreted applies to the Emergency Medical Systems Act? Professional liability. And the Fugaki decision, it's the Seventh Circuit decision, does I think a very helpful historical analysis of the code, consistent with all of the Illinois decisions, where they go back and they look at how historically first responders prior to having immunity from professional liability were held accountable for their negligence in rendering emergency services. That's where it started. So the legislature in response, as a matter of public policy, to prevent a chilling effect in the rendition of emergency services, vis-a-vis the patient, promulgated the Emergency Medical Systems Act. And five of the decisions that we've cited, which are all consistent, and a couple of which the Supreme Court, this Court at that time, declined to accept for review, they all state that the first Brock case, the legislature intended to encourage emergency response without the risk of malpractice liability for every bad outcome or unfortunate occurrence. Not for automobile collisions. Brock 2 says the same thing. Gleason, the legislature intended to encourage emergency response by trained medical personnel, again, without the risk of malpractice professional liability, not just medical malpractice. I mean, I can envision a scenario where they're driving a patient who's very fragile, they hit a big pothole and break their arm and they break ribs. I mean, that's professional liability that's not necessarily medical. That's what the cases state and that's been our position. But in Gleason the court goes on to explain that emergency situations are often fraught with tension, confusion, and as here, difficult physical locations for giving medical care. Emergency personnel must not be afraid to do whatever they can under the circumstances. I want to go back to the wisdom of the Perrin Court back in 1952 where that involved a private ambulance. And there the appellate court said, 60 years ago, almost exactly, this is at page 328 and 329 of that court's decision, the very nature of an ambulance when it is responding to an emergency lifts it out of the class of an ordinary vehicle. It is not a vehicle, it is an ambulance. It then becomes an emergency vehicle and except as is necessary to observe the rules of safety, both for itself and for others using the highway, it is entitled to precedence over other vehicles, all other circumstances being equal. However, the court said we cannot agree with the contention that ambulances have blanket immunity for their conduct, which is what the defendants are advocating here. They are trying to Then counsel, what does the statute mean when it says no person, agency and so forth in the normal course of conducting their duties or in an emergency shall be civilly liable as a result of their acts or omissions? Wouldn't we be reading out of the statute the provision about or in the normal course of their duties? No, Your Honor, because again, the duty at issue in the Emergency Medical Systems Act is the duty owed to the patient. That is the case law, that is the interpretation. Nothing in that statute says it pertains to the duty to drive with due care on the roads of this state, particularly if you are a private entity required to maintain insurance acting for profit. That is an important distinction between public and private. But the limited immunity provision granted gives immunity for the acts performed by the personnel vis-a-vis the patient. And this is underscored, and we have cited the three provisions in the Motor Vehicle Act, Section 205, 907 and 1421 to illustrate our point. And the appellate court was correct when it focused on Section 11205, because that is the starting point. Section 11205 states that the provisions of this chapter, that being the Motor Vehicle Code, applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles except as otherwise provided. And so that's where it's important for if the ambulance, which is just driving down the road as an ordinary vehicle, 7 o'clock at night on a November night, back on the road, and the driver's license is not valid, the driver's license is not valid, and the driver's license is not valid. So if an ambulance backed up 200 yards of stopped traffic, the testimony conflicts between 30 and 40 miles an hour. We don't know. That's for a jury to sort out. But nevertheless, where an ambulance sees 200 yards of stopped traffic on 95th Street backed up from Cicero, if they want to lift themselves out of the Motor Vehicle Code, the code requires they activate lights or siren. And they didn't. So they don't get any preference for any special treatment, any exemption. They are not removed from the rules of the road. And each of those provisions states expressly, nothing in the code, nothing in this chapter removes the ambulance driver from the duty to exercise ordinary care with respect to other vehicles and pedestrians on the road. So we have a Motor Vehicle Code that's been around for 80 years. Our legislature knows how to amend it. We have our Tort Immunity Act that this court's Harris decision turned on, where back in 1984, the provision upon which Harris turned, there's a special provision in that act, 5-106, that states specifically, publicly owned vehicles are exempt from the negligent operation of a motor vehicle when responding to an emergency or transporting a patient. That's 1984. The EMS Act, it's around since 1981. They didn't layer that over into the EMS Act, which they could have. In 1995, we have this provision. The legislature could have said, no, you can't do that. You can't do that. You can't do that. Just as it did in 5-106, that if the ambulance is engaged in any act of providing ambulance services, it's immune from the negligent operation of a motor vehicle when responding to an emergency call or transporting a patient. It didn't do that. We have two different duties. The duty of due care with respect to responsible and safe driving, and then the duty with respect to the ambulance. The legislature didn't amend it. They're speaking to us directly. All of the court's decisions state that it only applies to patients, the Emergency Medical Systems Act. The legislature is presumed to act with knowledge of this court's, the reviewing court's decisions. They've consistently held that the act applies to professional liability claims vis-a-vis the patient. That's the limit. If our legislature wanted to step in and amend saying that they're immune, a private ambulance is immune from the negligent operation of a motor vehicle, for ordinary automobile collisions, it could have said that. It could have rescinded those three sections of the Motor Vehicle Code. It did not do that. And quite frankly... Aren't you asking us to do that? Isn't it difficult to see how we wouldn't have to add some limiting language to the statute, like, shall not be civilly liable to the patient, in order to find it inapplicable? No, Your Honor. You're asking us to do what the legislature hasn't done? No, respectfully not. Because, again, keep in mind that the Emergency Medical Systems Act consists of 84 provisions. It's a regulatory code regulating emergency services in this state, down to licensing requirements, reporting requirements, the type of equipment they have to have in an ambulance. And so, again, consistent with this court's analyses in the immunity cases the court has looked at, this court has adopted a plain language approach. I think to reach the defendant's conclusion, you would have to add a provision that they're immune for ordinary negligence in their driving. The legislature has not done that. It knows how to do that, as illustrated and underscored by the Tort Immunity Act. The legislature did not have any exemption in the Motor Vehicle Code. To the contrary, it starts from the premise, everybody is subject to the rules of the road, lest we have havoc on our roads, unless they take some of these other steps to receive any type of preferential treatment. Under your theory, counsel, if the patient is being transported and there's an accident and the patient's injured because of the accident, are they covered? Are they able to provide negligence action based on negligence? The patient has no claim against the ambulance driver. Whether the patient has a claim against the other driver, I think, is an open question. And that's unanswered. But I think under your scenario, Your Honor, clearly under the Emergency Medical Systems Act, the patient, that's the quid pro quo to getting the benefit of emergency services. If something untoward happens, whether it's a collision, hitting a pothole. The patient's cause of action, it is addressed to a professional liability claim against the provider of the services. It is professional negligence. It's based upon negligent operation of the vehicle, not on negligent provision. I thought you were talking about it applied to negligent provision of medical care, medical malpractice. And in the ambulance, there are scenarios where the act of transporting that patient, let's say it's a life-saving transport, trying to get them to the hospital, that fact pattern is, the patient is receiving emergency services. The services vis-a-vis the patient can include driving. Now, I'm not saying this is wise, this immunity provision in the EMS statute vis-a-vis patients, but the legislature has spoken. They've spoken clearly with respect to the patient. The courts have interpreted it. I'm not saying the Tort Immunity Act is wise by giving publicly owned ambulances immunity from responding to an emergency or transporting a patient. And I'm not saying it's wise that in 5-106 they gave immunity and lifted them out of the duty to drive with due care for the negligent operation of a motor vehicle, but they spoke in that provision. And I'm not saying that all ambulances, all vehicles are subject to the rules of the road. They must be. Unless they can point to an exemption removing them in the code. And over and over with each of those three statutes, the legislature came back and said nothing in this statute removes the driver of the ambulance from the duty to operate with ordinary care. I see that your light is gone, and this is a way that I want to segue into this question. Before answering a question, you were talking about havoc on the road. I mean, even going with Ms. DeGran's interpretation of the statute, we're not left with absolute immunity here. We're left with Wilfo and Watten. The havoc on the road, the legislature under her interpretation, has just raised the burden upon a plaintiff to show in these circumstances for various reasons that Wilfo and Watten must be proven. Some immunity statutes don't even have exceptions for Wilfo and Watten. So I guess my first question is, in light of that, couldn't that be a consistent interpretation of the act in light of the fact that the legislature would have still seen fit to have a Wilfo and Watten exception to the immunity? And on the specifics of this case, Part B of that question would be, what is your position on the Wilfo and Watten aspects of this case? To follow the first part of your question, Your Honor, with respect to the Emergency Medical Systems Act, the legislature has chosen to limit a patient's professional liability cause of action to a Wilfo and Watten claim. That is the limit, that's the check on that professional conduct, but the legislature made a policy determination that to stop a chilling effect for the first responders, they're going to give them this immunity in the rendition of the emergency services vis-a-vis the patient. And that's the five decisions that have addressed this. They discussed that. Moreover, if now we're going to limit motor vehicle collisions, the ordinary operation of a motor vehicle, to Wilfo and Watten claims, I think that's not only inconsistent with the plain language of the code, but also with the financial responsibility law. We have mandatory insurance laws. Private entities, unlike a public entity, are required to carry collision for this type of action. That's an expression of legislative intent that they are not immune for their automobile collision liability. And lastly, I don't understand why the Illinois Ambulance Association is advocating that its members are limited to being sued for Wilfo and Watten. That strips them of their insurance coverage. That may help one defendant today, but I don't know how that helps all the private ambulances in this state. And then with respect to the second part of your question, Your Honor, it's an interesting procedural question. I mean, admittedly, the record is what it is. It's been our position that the Emergency Medical Systems Act does not apply. When we were responding to a motion for summary judgment, there is case law that says you can raise an affirmative defense in the four corners of the summary judgment briefs. Being good advocates, we raised the Wilfo and Watten. The court rejected it. But the fundamental inquiry is whether the trial court had an opportunity to address the issue. So I think it's there. Having a pleading, would that have been the better practice? Certainly. But I think it's been raised and preserved. And that's not the essence of our argument. I understand. And where are we left procedurally then? I mean, there was never a request of the trial court when summary judgment was granted to the defendants on the tort immunity portion of this. And you did not ask to re-plead, right? That's correct, Your Honor. So you're not asking this court, if we disagree, I take it, to allow it to go back, to allow you to re-plead Wilfo and Watten? Yes, we would. We would be asking that court. Because we're submitting it was raised. And if the court finds that the Act applies, we think there's enough facts there to permit us, to grant us leave, to go back and clean up our pleadings to assert a cause of action. And that is consistent with the Code, to provide the opportunity for the defendants to go back and plead. Thank you very much. We request that you affirm the appellate court's reversal of the summary judgment. Thank you. Rebuttal? Thank you, Your Honor. I believe to accept the plaintiff's position in this case, this court would have to overrule Abruzzo. Because we've heard quite a bit about the tort immunity section that refers to driving and the ordinary operation of a vehicle here. But what else is the statute referring to when it refers to transport, if not driving? I think it's clear, and I think this court has found that it's clear. So I don't believe that distinction can be drawn unless this court is going to reverse itself and revisit Abruzzo and digress substantially from the plain language of the statute. As far as only applying to medical malpractice liability, there's no decision, and of course I read all the decisions that were cited in the response brief, that says that the EMS immunity provision applies only to medical malpractice or public professional negligence. Now, there is a recognition in many of them that in recognizing the legislative intent, that that is one of the kinds of action that the legislature wanted to limit to a Wolf and Wanton situation before civil liability would be found. But there's no case that says, and certainly the statute itself doesn't have a limitation for professional negligence. And it's clear, I can direct the court to three cases. We cited them in our reply. The American National Bank case, the Affitado case, the Brock case. All those cases did not involve medical malpractice allegations. The EMS Act applied. I think it's clear from Section 2 of the EMS Act, which states the legislative purpose, that it's broad. I think it's clear from the language of Section 3.150 that it's broad. And I don't believe that this interpretation that's being advanced here is going to change the way that the legislature, as it's referred to today by the plaintiff, can stand not just in light of the transport reference in the statute, but also in light of the obvious application to non-emergency situations. Because that ambulance, even in a non-emergency transport, is not just another vehicle or not just an ordinary vehicle. I think the amicus said it's not just a truck driver with a stretcher in the back. This is a non-emergency medical transport and it comes within the EMS Act. As far as the Perrin Court in 1952, its observations have perhaps some general relevance, but of course that long predated the EMS Act. And I don't think that it is helpful in trying to interpret the immunity provision here. The legislature, we've heard quite a bit in the briefs and also today about a distinction between private and governmental situations. There's no distinction in the EMS Act. In fact, the EMS immunity provision specifically encompasses private entities. We'd ask the court, unless there's any questions, to continue to recognize and give effect to the legislative intent to the broad provision that's set forth in the immunity to the broad application of the Immunity Act. And we ask that the court reverse the appellate court and reinstate the trial court's order and bring summary judgment for the defendants. Thank you very much. Thank you for your arguments this morning. Case number 114310, Karen Wilkins versus Rhonda Williams is taken under advisement as agenda number 10.